VIVIAN M. FOJTIK ET AL. *v.* TONIA R. HUNTER ET AL.
(SC 16939)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued April 17—officially released August 12, 2003

*Hugh D. Hughes*, with whom, on the brief, were *William F. Gallagher*, *William P. Yelenak* and *John D. Ivers, Jr.*, for the appellants (plaintiffs).

*W. Glen Pierson*, with whom was *Charles P. Reed*, for the appellees (defendant National Car Rental Systems, Inc., et al.).

*Opinion*

SULLIVAN, C. J. The dispositive issue in this appeal is whether a lessor of a motor vehicle may be held

liable for the tortious conduct of its lessee under General Statutes § 14-154a,[1] when the lessee was operating the leased vehicle with a suspended operator's license. The plaintiffs, Vivian M. Fojtik and Kim Baran, brought this negligence action against the defendants Tonia R. Hunter and Litrina Anthony to recover damages for injuries sustained in an automobile accident. They also sought damages, under § 14-154a, from the defendant National Car Rental System, Inc., doing business as Barberino Rental Corporation (National), which had leased Hunter the vehicle she was operating at the time of the accident. Section 14-154a imposes on lessors of vehicles vicarious liability for the tortious conduct of their lessees. The trial court granted National's motion for summary judgment on the ground that § 14-154a does not cover situations in which the lessee was operating the vehicle with a suspended operator's license in violation of his or her lease agreement with the lessor.[2] The plaintiffs appeal[3] claiming that liability

---

[1] General Statutes § 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

[2] The lease agreement between National and Hunter provides in relevant part: "Who May Drive the Vehicle—Authorized Drivers and Additional Authorized Drivers:

"a. I represent that I am a capable and validly licensed driver, 25 years of age or older. . . .

"b. The Vehicle shall not be operated by anyone except me, and the following Authorized or Additional Authorized Drivers who are capable and validly licensed drivers, 25 years of age or older . . . .

"Authorized Drivers must be:

"(1) a member of my immediate family who permanently lives with me; or

"(2) a business partner, employer or regular fellow employee who drives the Vehicle for business purposes.

"Additional Authorized Drivers must be:

"(1) a person who has signed the Rental document of this Agreement as an Additional Authorized Driver after qualification by the Company. . . ."

[3] The plaintiffs appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

under § 14-154a may attach when the lessee has violated the lease agreement. We agree with the plaintiffs and, accordingly, reverse the summary judgment to the contrary.

The record reveals the following relevant undisputed facts. This action arises from a motor vehicle accident that occurred on June 13, 1998, on Routes 5 and 15 in Berlin. Fojtik was driving her Toyota Corrolla, with Baran as her passenger, when they sustained injuries after Fojtik's vehicle was struck by a vehicle owned by National and driven by Hunter.[4] At the time of the accident, Hunter's operator's license had been suspended.

The plaintiffs brought this action alleging negligence against Hunter and Anthony and liability under § 14-154a against National. The plaintiffs also brought separate actions against Government Employees Insurance Company (GEICO) to obtain the uninsured motorist's coverage available under the policy that GEICO had issued to Fojtik. Those actions were consolidated with the present action, and both GEICO and National filed motions for summary judgment.

Thereafter, the trial court granted National's motion for summary judgment. The court found that Hunter had violated the condition of the lease agreement requir-

---

[4] Hunter leased the vehicle from National, and Anthony was listed on the lease agreement as an additional authorized driver. The plaintiffs alleged in the alternative that either Hunter or Anthony had been driving the vehicle at the time of the accident. The record contains an affidavit by Hunter, however, stating that Hunter had been driving at the time of the accident and that she told the police that Anthony had been driving. The trial court's analysis assumed that Hunter was driving at the time of the accident. The court also concluded, however, that, even if Anthony had been driving, she too would have been an unauthorized driver because she was only twenty-two years old. There is no claim on appeal, however, that Anthony was driving, and we proceed solely on the issue presented, which is the effect on National's liability under § 14-154a of Hunter's operation of the vehicle while her license was under suspension.

ing that she be a validly licensed driver and, therefore, that she did not have lawful possession of the vehicle. Relying on our decision in *Pedevillano* v. *Bryon*, 231 Conn. 265, 268, 648 A.2d 873 (1994), the court concluded that National could not be held liable under § 14-154a.[5] This appeal followed.

The plaintiffs claim on appeal that the trial court improperly concluded that, under § 14-154a, the lessor of a motor vehicle is not liable for the acts of its lessee when the lessee has violated the lease agreement by driving the vehicle with a suspended license. We agree.

"Our standard of review of a trial court's granting of summary judgment is well established. Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review." (Internal quotation marks omitted.) *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 158–59, 793 A.2d 1068 (2002). Because no material fact is in dispute in the present case, the dispositive issue is the proper construction of § 14-154a. "Statutory construction is a question of law and therefore our review is plenary." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 213, 796 A.2d 1141 (2002).

Section 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator

---

[5] The trial court held that, because it had granted National's motion for summary judgment, no insurance coverage was available through the lessor and, therefore, there was a triable issue of material fact as to whether GEICO was to provide uninsured motorist coverage to Fojtik and Baran.

would have been liable if he had also been the owner."
By its plain language, § 14-154a provides no exception
for cases in which a lessee has violated his lease
agreement. We previously have recognized, however,
that, in certain circumstances, liability under § 14-154a
can be limited by the lease agreement, even though
§ 14-154a does not expressly allow for such a limitation.
See *Pedevillano* v. *Bryon*, supra, 231 Conn. 270.

To understand the scope of this exception to liability
under § 14-154a, a review of our previous interpreta-
tions of that statute is helpful. In *Fisher* v. *Hodge*, 162
Conn. 363, 365–67, 294 A.2d 577 (1972), we considered
a claim that the defendant, the brother of the lessee of
a rental car, who had been driving the car with the
lessee's permission at the time that it collided with a
car driven by the plaintiff's decedent, was not part of
the lessee's immediate family and, therefore, was an
unauthorized user under the lease agreement. Accord-
ingly, the defendant lessor claimed that it was not liable
under § 14-154a. Id., 366–67. We concluded that the term
" 'immediate family' " as used in the lease agreement
included the siblings of the lessee. Id., 367–68. We also
stated, however, that even if the driver had not been
an authorized user under the lease agreement, the lessor
would be held liable because § 14-154a imposes liability
regardless of the terms of the lease agreement limiting
the use of the vehicle to specified individuals. Id.,
370–71.

In *Pedevillano* v. *Bryon*, supra, 231 Conn. 267, the
lessee had leased a car from the defendant lessor. The
lessee gave permission to the defendant driver, who
was not a party to the lease agreement, to operate
the leased vehicle. Id. While operating the vehicle, the
defendant driver negligently and recklessly caused
injury to the plaintiff. Id. The plaintiff sued the lessor
of the vehicle under § 14-154a, claiming, inter alia, that:
"(1) literally construed, § 14-154a imposes uncondi-

tional liability on a lessor for injuries caused by any user of the lessor's vehicles; [and] (2) liberally construed in light of its remedial purposes, § 14-154a imposes liability on a lessor for injuries caused by a person who uses the vehicle with the permission of an authorized lessee . . . ." Id., 268. We rejected both arguments. Id., 269–70.

With respect to the first argument, we concluded that the plaintiff's broad interpretation of § 14-154a was contrary to our earlier cases wherein we "consistently construed [§ 14-154a] as imposing on one who rents or leases a motor vehicle to another the same liability as that of its operator, provided the vehicle, at the time in question, is being operated by one *in lawful possession of it pursuant to the terms of the contract of rental*." (Emphasis in original; internal quotation marks omitted.) Id., 268. We rejected the plaintiff's second argument for the same reason. Id., 269–70. Thus, we indicated, contrary to our dicta in *Fisher*, that a lease agreement could limit § 14-154a liability. Id., 270.

We emphasized, however, when discussing the role of the lease agreement in eliminating § 14-154a liability, "that the lessor's right to limit the *identity* of authorized drivers does not, in light of the purpose of § 14-154a, relieve the lessor of liability to third parties for *misconduct* by such authorized drivers, even when such misconduct violates express contractual restrictions on the use of the vehicle." (Emphasis in original.) Id., 270–71. Thus, we recognized a distinction, for purposes of liability under § 14-154a, between an authorized driver who breaches the terms of the lease agreement yet still has lawful possession, and an unauthorized driver who is not in lawful possession of the vehicle. The present case requires this court to clarify this distinction further.

In *Fisher* v. *Hodge*, supra, 162 Conn. 369, we stated that "[t]he purpose of [§ 14-154a] was not primarily to give the injured person a right of recovery against the

tortious operator of the car, but to protect the safety of traffic upon highways by providing an incentive to him who rented motor vehicles to rent them to competent and careful operators by making him liable for damage resulting from the tortious operation of the rented vehicles. . . . The rental of motor vehicles to any but competent and careful operators, or to persons of unknown responsibility, would be liable to result in injury to the public upon or near highways, and this imminent danger justified, as a reasonable exercise of the police power, this statute, which requires all who engage in this business to become responsible for any injury inflicted upon the public by the tortious operation of the rented motor vehicle." (Internal quotation marks omitted.) Thus, we recognized in *Fisher* that an important public policy underlying § 14-154a is to ensure that lessors rent motor vehicles only to known safe drivers. Although, in *Pedevillano*, we ruled contrary to our dicta in *Fisher* that the lessor in that case would have been liable even if the driver had been unauthorized, nothing we stated in *Pedevillano* suggests that we have renounced this public policy view. Indeed, this public policy supports our holding in *Pedevillano* that a lessor has the right to "impos[e] reasonable restrictions on the *identity* of those to whom it is willing to entrust its property and for whose conduct it is willing to assume risk." (Emphasis added.) *Pedevillano* v. *Bryon*, supra, 231 Conn. 270. Controlling the identity of the lessee allows the lessor to rent vehicles to safe drivers.

This public policy would be undermined, however, by releasing lessors from liability for harm caused by an authorized driver to whom the lessor voluntarily has entrusted its property, merely because the driver breached the lease agreement. Under such an interpretation of § 14-154a, the "lawful possession" exception that we recognized in *Pedevillano* v. *Bryon*, supra, 231

Conn. 269, would swallow the general rule that lessors are liable for harm caused by their lessees, and the incentive to rent vehicles to known safe drivers would be reduced.

Accordingly, we conclude that the term "in lawful possession," as used in *Pedevillano*, and the earlier line of cases cited therein, does not mean "in strict compliance" with all of the terms of the lease agreement.[6] Instead, the driver is in "lawful possession" when he is an authorized driver under the terms of the lease agreement that limit the identity of the drivers authorized to use the vehicle. In other words, "authorized drivers" means those drivers who are identified expressly or by reference in the lease agreement, not just those who comply with all terms of the agreement. This definition is consistent with the distinction between identity and misconduct discussed in *Pedevillano* v. *Bryon*, supra, 231 Conn. 270–71.

Our conclusion is also in accord with the legislative policy of allocative efficiency underlying § 14-154a. See *Hughes* v. *National Car Rental Systems, Inc.*, 22 Conn. App. 586, 588–89, 577 A.2d 1132, cert. denied, 216 Conn. 817, 580 A.2d 57 (1990), citing W. Prosser & W. Keeton, Torts (5th Ed.) § 69 ("[u]nderlying the imposition of this type of liability is a legislative policy of a deliberate allocation of a risk, which holds an enterprise liable for such injuries as a cost of doing business"). By allo-

---

[6] We note that some trial courts have held otherwise under *Pedevillano*. See *McEvoy* v. *Moriarty*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV 98-0261107S (November 13, 1998) (23 Conn. L. Rptr. 368)(holding that driving with suspended license rendered driver unauthorized and lessor, therefore, had no liability under § 14-154a); *Rider* v. *VW Credit Inc.*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 94 0142365 (August 7, 1996) (same), aff'd, 45 Conn. App. 915, 694 A.2d 44 (1997); but see *Young* v. *Kelly*, Superior Court, judicial district of New Haven at New Haven, Docket No. CV 99-0429515S (March 17, 2000) (26 Conn. L. Rptr. 668) (holding that lessee's driving with suspended license did not absolve lessor's liability).

cating the risk of loss to the lessor, § 14-154a serves two important purposes. First, the statute assigns the risk of loss to the party who is in a position to decrease that risk. Second, it assigns the loss to the party who is most able to spread the loss. Once the lessor has no control over the identity of the driver, then the lessor is no longer in a position to decrease the risk of loss and should not be subject to liability.

National claims, however, that the language of the agreement[7] makes the status of the operator's license an issue of identity. In support of this claim, National maintains that " '[i]dentity' relates to who a person is, and is concerned with status," while " '[m]isconduct' relates to what a person does, and is concerned with behavior." Accordingly, National contends, the status of a lessee's operator's license is an aspect of the lessee's identity, and misrepresentation of that status implicates identity rather than misconduct for purposes of our dicta in *Pedevillano* distinguishing identity claims from misconduct claims. This claim is without merit.

In the absence of any claim that Hunter was not the person who actually signed the lease agreement, or that she misrepresented her identity to National at the time the lease agreement was entered into, her misrepresentation to National that she had a valid license, and her operation of the vehicle while her license was suspended, constituted misconduct by an authorized driver within the scope of our dicta in *Pedevillano*. To conclude otherwise would absolve lessors from liability for almost any breach of the lease agreement and would render § 14-154a ineffectual.

National also claims that placing the onus on lessors to verify license status is inappropriate because such a requirement goes beyond the requirements that the state already places on lessors under General Statutes

---

[7] See footnote 2 of this opinion.

§ 14-153.[8] National contends, moreover, that it is doubtful that lessors are even capable of such verification. We recognize the burden that our decision places on lessors. As we have stated, however, the primary legislative policy underlying § 14-154a is that lessors should rent only to known safe drivers. It is not for this court to abrogate that legislative policy because it is overly burdensome.

Because, in the present case, the driver of the leased vehicle lawfully possessed it at the time of the accident, National is liable under § 14-154a for any damages caused by the driver. Accordingly, we conclude that the trial court improperly granted National's motion for summary judgment.

The judgment is reversed and the case is remanded with direction to deny National's motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.

---

[8] General Statutes § 14-153 provides: "Any person, firm or corporation which rents a motor vehicle without a driver for a period of thirty days or less shall inspect or cause to be inspected the motor vehicle operator's license of the person initially operating such motor vehicle, shall compare the signature on such license with that of the alleged licensee written in his presence and shall keep and retain for a period of one year a record of the name of such licensee, the number of his license and the date of issue thereof, the registration number of the motor vehicle so rented and the mileage reading displayed by the odometer of such vehicle at the time such vehicle leaves and returns to the lessor's place of business, which record shall be subject to the inspection of any police officer, any Department of Motor Vehicles inspector or any Department of Motor Vehicles employee designated by the commissioner; provided no person shall rent or lease any motor vehicle without a driver to a minor without the written consent of a parent or guardian of such minor."